498 A.2d 676

**STATE of Maryland**

v.

**Stephen R. QUINN.**

**No. 513, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 9, 1985.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Thomas E. Hickman, State's Atty. for Carroll County and Peter M. Tabatsko, Asst. State's Atty. for Carroll County, Westminster, on brief), for appellant.

Clifford B. Silbiger, Westminster, for appellee.

Argued before GILBERT, C.J., and WILNER and ALPERT, JJ.

GILBERT, Chief Judge.

When an accused exercises his or her constitutional right to the assistance of counsel, "interrogation must cease until an attorney is present." That rule was announced in *Miranda v. Arizona,* 384 U.S. 436, 526, 86 S.Ct. 1602, 1655, 16 L.Ed.2d 694, 753 (1966) and emphasized in *Edwards v.*

*Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Shortly after *Edwards* was decided, this Court handed down its decision in *Bryant v. State,* 49 Md.App. 272, 431 A.2d 714, *cert. denied,* 291 Md. 772 (1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). In *Bryant,* a police officer ceased interrogation after the right to counsel was invoked, but took Bryant into a room where a codefendant was busily writing a statement. That statement, an officer told Bryant, implicated Bryant in the offense. Bryant was told that the officer had called the public defender but that no one was available at the time and that Bryant would have to be placed in a cell until a lawyer could be located.

We condemned the officer's attempt to evade the tenets of *Miranda* and *Edwards* and stressed that we would not tolerate efforts by law enforcement officers to induce a waiver of the right to the presence of counsel. We said:

"[E]fforts by law enforcement officers to induce an ensuing waiver of the right to the presence of counsel cannot and will not be tolerated. Violation of *Miranda-Edwards* will lead to the suppression of any evidence obtained in contravention thereof, except as may be permitted by *Harris v. New York* [401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)], *supra.* We point out that the bounds of both the Fifth Amendment and Article 22 of the Maryland Declaration of Rights are exactly the same as those of the conduct they seek to prevent. Attempts to manipulate the mental process of the accused, arrestee, or suspect in order to 'psych' him or her into changing his or her mind about the presence of counsel are just as devastating to individual rights as is the case of the 'rubber hose.' The only difference between the two types of coercion is the matter of the degree of the duress."

The Court of Appeals in *Radovsky v. State,* 296 Md. 386, 464 A.2d 239 (1983), noted that in both *Radovsky* and *Edwards,* "teams of detectives initiated the communication about criminal activity," notwithstanding the arrestee's re-

quest for counsel. The Court said: "The rule set forth in *Edwards,* that when an arrestee expresses his desire to have counsel present all interrogation must cease 'unless the accused himself initiates further communication.' (451 U.S. at 485 [101 S.Ct. at 1885]), is controlling...." *Id.* at 399, 464 A.2d at 246.

■ The rule of *Edwards, Radovsky,* and *Bryant* is crystal clear. Once an accused, arrestee or suspect requests counsel, all further interrogation must cease. Before it may be continued, the accused, arrestee or suspect must initiate further communication. This rule, in the words of *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), is "a prophylactic one, designed to protect an accused in custody from being badgered by police officers." *Id.* at 1044, 103 S.Ct. at 2834, 77 L.Ed.2d at 411.

■ The burden of showing that the accused, arrestee or suspect initiated further communication after having invoked *Miranda* rests on the prosecution. *Id.; Radovsky v. State,* 296 Md. at 400, 464 A.2d at 247; *Bryant v. State,* 49 Md.App. at 278, 431 A.2d at 718. Efforts by law enforcement officers to induce an ensuing waiver of the right to the presence of counsel cannot and will not be permitted. *Bryant v. State,* 49 Md.App. at 278, 431 A.2d at 718.

We turn now to the instant case where the question before us is did the State trooper induce a waiver of the right to counsel. The record reveals that Stephen R. Quinn was arrested by the Maryland State Police at his place of employment and charged with robbery with a dangerous and deadly weapon. While en route to the police barracks, Quinn was read the *Miranda* rights. He requested the presence of an attorney. The State troopers did not thereafter ask any question pertaining to the offense. When Quinn arrived at the barracks, he was allowed to call his mother. She attempted to contact a lawyer, but in view of the fact that the time was 6:15 p.m. on a Friday evening, she had difficulty locating one. She testified that she called

the barracks about one-half hour after she had received the call from Quinn. She wanted to report that she was having a problem obtaining an attorney. Quinn told her at that time that he had made a statement. It is that statement that is the subject of this appeal.

During the period of time following Quinn's telephone call to his mother to obtain an attorney, Trooper Sczerbicki "gave" him a copy of the "Statement of Charges." The trooper said that Quinn "had to sign a paper that he was read the statement and the charges, and then I tore off the copies and gave it [sic] to him." Attached to the statement of charges was a district court form entitled, "Application for Statement of Charges." The form read in pertinent part:

"I, the undersigned, apply for a Statement of Charges and a Summons or Warrant which may lead to the arrest of the above named Defendant because on or about 1/17/84 at 450 E. Main St., Westminster, Carroll Co., Md., the above named Defendant did participate in the armed robbery of High's Store in which $134.00 in cash, $6.00 in food stamps and 1 pack of $.49 bubble gum was taken. Co-defendants Dean Cooper, Dennis Wright and Jeff Porter advised this applicant that the above defendant was involved. The co-defendants advised that the defendant drove the getaway car during the robbery. Dean Cooper had entered the High's store with a small .22 cal revolver and robbed the store of above property. The co-defendants advised this applicant that the above defendant was the one who pushed the issue to rob the store. The above defendant was involved in splitting the money that was taken during the robbery. The co-defendants advised this applicant that the above defendant wanted to rob the High's store so he could get gas for his car. The defendant parked his car along side the dirt road next to High's during the robbery and set in his car waiting for Dean Cooper during the robbery. After the robbery, the defendant drove the co-defendants to Dennis Wright's residence at which time they switched into co-defendants Jeff

Porters vehicle. The property of High's store was taken from employee's Roxanne Diehl and Brenda Dutterer at gunpoint.

. . . .

... The property of High's was taken from Roxanne Diehl and Brenda Dutterer at gunpoint."

Trooper Sczerbicki subscribed the form and swore to it before a commissioner of the District Court.

Following indictment by the Grand Jury, Quinn moved to suppress the statement he had given to Trooper Sczerbicki on the ground that it was taken in violation of *Miranda* and *Edwards*. Judge Luke K. Burns, Jr., in the Circuit Court for Carroll County, suppressed Quinn's statement. Judge Burns stated:

"In this case, the actions of the police in presenting the Defendant with the Application was tantamount to initiating communication with him after the invocation of his *Miranda-Edwards* rights. Mr. Quinn had clearly indicated that he wanted to talk to an attorney before making any statement. The trooper did not, of course, actually put verbal questions to him, nor engage the Defendant in actual conversation on the subject of the crime with which he was charged. Nevertheless, by giving him the Application the effect was precisely the same as if oral speech had been employed.

[Quinn, with his eighth grade reading ability], without presence or advice of counsel, was confronted by the incriminating statements of co-defendants. In essence he was challenged to explain his position, after having requested the opportunity to speak with an attorney before continuation of police questioning or interrogation. Tfc. Sczerbicki stated that it is his normal practice to give defendants their copies of the documents during the initial processing of the arrest. However, under these circumstances the practice amounted to a continuation of questioning, though obviously subtle, in violation of the constitutional requirements governing this area of the law."

As we see it, the only difference between *Bryant* and the matter *sub judice* is that no one handed Bryant a summary of his codefendants' statements. Bryant was told that his codefendants had incriminated him. Here, Quinn was shown in clear print that his codefendants not only indicated that he was involved, but that he "was the one who pushed the" robbery.

When the trooper handed the application to Quinn to read, it was the same as if he had said to Quinn, "Look and see for yourself what I have against you. Now what do you have to say"? We believe, as did Judge Burns, that the trooper's actions were deliberately designed to circumvent *Miranda* and *Edwards*. What the trooper did was innovative; it was also impermissible. We repeat what we said in *Bryant*:

> "[O]nce the right to the presence of counsel has been made by the accused, arrestee, or suspect, any attempt by the authorities to 'spark' the accused's 'own initiative' will contaminate the waiver and render it a nullity."

49 Md.App. at 280, 431 A.2d at 718.

There are no "short cuts" to *Miranda* compliance.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY CARROLL COUNTY.