SYE C. NEWTON, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 298, 2009.
Supreme Court of Delaware.
Submitted: December 18, 2009.
Decided: March 15, 2010.
Before STEELE, Chief Justice, HOLLAND, and RIDGELY, Justices.

ORDER
MYRON T. STEELE, Chief Justice.
This 15th day of March 2010, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:
(1) A Superior Court jury convicted the appellant, Sye Newton,[1] of one count each of first degree kidnapping, possession of a deadly weapon during the commission of a felony, and assault in a detention facility. The Superior Court sentenced him to a total period of six years at Level V incarceration. This is Newton's direct appeal.
(2) The testimony presented by the State at trial fairly established that, on May 14, 2008, both Newton and the victim, Kalvin Peterson, were inmates at the Howard R. Young Correctional Facility in Wilmington. Shortly before noon, during a recreation period when inmates are allowed out of their cells, Newton took Peterson hostage. Peterson was bound and gagged in Newton's cell. Newton held a razor to Peterson's neck. Over the course of the next five hours, Newton made various demands of correctional officials. During that course of time, Peterson sustained a cut to his shoulder, which required several stitches to close. The stand-off ended when guards threw a stun grenade into Newton's cell, rushed in and took him into custody.
(3) At the trial, the State called Peterson as its first witness. Peterson claimed to have no memory of the event and refused to testify, although he previously had cooperated by giving statements to the police and the Attorney General's office. The trial judge informed Peterson that he would hold him in contempt and sentence him to prison if he refused to testify. Peterson chose to be sentenced to six months in prison for contempt rather than testify. Thereafter, the State presented the testimony of six witnesses, consisting of four correctional officers and two police officers. The State rested its case. Newton chose not to testify and offered no witnesses in his own defense. Newton attempted to offer a document into evidence, which purported to be a statement signed by Peterson indicating that he had voluntarily participated in Newton's alleged hostage crisis as a means of peacefully demonstrating against certain conditions at the prison. Because Newton chose not to testify or present any witnesses, however, the Court ruled that his document could not be admitted into evidence. The jury convicted Newton of all three charges.
(4) Newton raises four issues in his opening brief on appeal. First, he contends that the prosecutor engaged in misconduct by refusing to compel Peterson to testify, which denied Newton his right to confront a witness against him. Second, Newton argues that the prosecutor engaged in misconduct by failing to have a blood-stained towel used during the hostage incident tested for forensic evidence. Third, Newton asserts that the prosecutor engaged in misconduct by presenting testimony she knew or should have known was perjured. Finally, Newton argues that the trial court erred in failing to admit Peterson's alleged signed consent form into evidence. We address these claims in order.
(5) With respect to Newton's first claim of prosecutorial misconduct, the record reflects that, after Peterson was called to the stand and refused to cooperate, the trial judge appointed counsel to represent Peterson and ordered that Peterson be held in the courthouse while the trial continued. Later in the day, Peterson's counsel at first reported that Peterson might reconsider. After further consultation, however, Peterson remained steadfast in his refusal to testify. The judge later instructed the jury not to consider anything Peterson had said while on the stand. In fact, Peterson's time on the stand had been so brief that he had offered no substantive testimony.
(6) Newton's argument that Peterson's refusal to testify is the result of prosecutorial misconduct is simply unsupported by the record. The State called Peterson anticipating that he would cooperate and testify truthfully. Peterson's refusal to testify in no way is attributable to any action by the prosecutor. Moreover, there is no basis for Newton's argument that he was denied his constitutional right to confront a witness against him because, in fact, Peterson offered no testimony against him. The only out-of-court statement made by Peterson was admitted, without objection, through the testimony of a correctional official, Jonathan Sines, who testified that he had spoken to Peterson during the course of the hostage incident and Peterson had said to him, "You got to get me out of here...he cut me on my shoulder." This statement was properly admitted, regardless of Peterson's availability to testify, because it was an excited utterance.[2] There was nothing improper about the prosecutor eliciting this statement from another witness even though Peterson himself did not testify. Accordingly, we reject Newton's first claim of prosecutorial misconduct.
(7) Newton next argues that the prosecutor engaged in misconduct by failing to test a bloody towel, which was admitted into evidence without objection. We disagree with this argument. The State has an obligation to collect and to preserve evidence.[3] In this case, the State fulfilled its duty by collecting and preserving the towel, which witnesses testified had been used by Newton to cover Peterson's head and became blood-stained after Peterson was cut on the shoulder. The towel was available to Newton, if the defense wished to have it tested in order to dispute the State's contention that the towel contained Peterson's blood. The State, however, was not obligated to have the towel tested in order to confirm a fact that its witnesses' did not dispute. Under these circumstances, we find no prosecutorial misconduct.[4]
(8) Newton's next claim is that the State offered perjured testimony. While his argument is hard to follow, it appears that Newton challenges the veracity of the testimony of Jonathan Sines, who acted as a negotiator during the hostage situation, because Sines never submitted a written report of the incident. Newton, however, never made any objection to Sines' testimony at trial. Accordingly, we review his claim on appeal for plain error.[5] In this case, we find no error, plain or otherwise. While the State is required to turn over witness statements and reports to the defendant after the witness has testified on the stand,[6] there simply is no evidence in this case that such a witness report existed. Accordingly, there is no factual basis for Newton's contention that the prosecutor withheld the report from him.
(9) Newton's final argument is that the Superior Court erred in refusing to admit into evidence a document that Peterson allegedly signed, which indicated Peterson's consent to be held hostage by Newton as a means of protesting prison conditions. Once Newton informed the trial judge of his intention not to testify or call any witnesses, however, the trial judge was entirely correct in holding that Newton could not seek to have the document admitted into evidence without a witness to provide some foundation for admission of the document. Without a witness who could identify and authenticate the document to establish that it was what Newton claimed it was, the Superior Court was entirely correct in holding that the document was not admissible.[7]
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Newton requested and was permitted to discharge his appointed counsel and to represent himself at trial. He continues to represent himself in this appeal.
[2] Del. Unif. R. Evid. 803(2) (2010).
[3] Deberry v. State, 457 A.2d 744, 752 (Del. 1983).
[4] Diaz v. State, 508 A.2d 861, 866 (Del. 1986).
[5] Wainwright v. State, 504 A.2d 1096, 1110 (Del. 1986).
[6] Jencks v. United States, 353 U.S. 657 (1957); Del. Super. Ct. Crim. R. 26.2 (2010).
[7] Del. Unif. R. Evid. 901(a) (2010).