IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HOWARD A. WALSH, | § | |
| | § | No. 612, 2015 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1410004172 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: May 6, 2016
Decided: June 29, 2016

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

# ORDER

This 29th day of June 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) On May 13, 2015, a Superior Court jury found the appellant, Howard A. Walsh, guilty of three counts of Possession of a Firearm by a Person Prohibited ("PFBPP") and one count each of Possession of Firearm Ammunition by a Person Prohibited ("PFABPP"), Carrying a Concealed Deadly Instrument, and Criminal Impersonation. Walsh was sentenced to thirty-three years of Level V

incarceration, suspended after thirty years for six months of Level II probation. This is Walsh's direct appeal.[1]

(2) The evidence presented at trial established that Walsh was convicted of Burglary in the Second Degree, a felony, in New York in 1988. On October 6, 2014, Walsh was seated in the driver's seat of a Nissan Sentra in front of Miller's Gun Shop. A male customer followed a female customer who had just purchased a gun out of the store. The male customer saw the female customer go to the car and give Walsh the gun she had purchased. The male customer, who was retired from the military and had experience with guns, saw that Walsh was wearing a camouflage flak jacket and heard Walsh rack a gun.

(3) The Delaware State Police were notified of suspicious activity. Trooper Jason Fischetti arrived on the scene and approached Walsh. Trooper Fischetti saw that Walsh was wearing a badge around his neck that said "Carry Concealed Permit." Trooper Fischetti also saw a black and magenta handgun on the passenger side floor of the car. Walsh told Trooper Fischer that his wife had bought the gun for protection of her jewelry because they lived in a bad neighborhood.

---

[1] On February 1, 2016, after this matter was returned from remand to the Superior Court, we granted Walsh's request to exercise his right to self-representation and granted his counsel leave to withdraw.

2

(4) Corporal Christopher Popp next arrived on the scene. When Corporal Popp asked Walsh to identify himself, Walsh said he was a detective and then laughed and gave his name. Corporal Popp searched Walsh and found that he had an electronic control device labeled "Police" and a holster. Walsh explained that the holster was for additional guns he had at his home. After Walsh consented to a search of his home, the police found two black powder firearms and black powder ammunition.

(5) After the State's case, Walsh moved for a judgment of acquittal on the Criminal Impersonation count. The Superior Court denied the motion.

(6) Walsh testified that his wife bought the black and magenta gun for herself because she had jewelry and they lived in a bad neighborhood. Walsh also testified that he never touched or racked the black and magenta gun. As to the black powder guns and ammunition found at his house, Walsh stated that when he bought the guns at a gun convention, a Philadelphia police officer told him it was lawful for him to buy the guns.

(7) The jury found Walsh guilty of three counts of PFBPP and one count each of PFABPP, Carrying a Concealed Deadly Instrument, and Criminal Impersonation. Based on his two previous violent felony convictions in New York, Walsh was sentenced under 11 *Del. C.* § 1448(e)(1)(c) to minimum mandatory Level V time of ten years for each of the PFBPP convictions. Walsh

3

was sentenced to three years of suspended Level V time on the remaining convictions. This appeal followed.

(8) Walsh first argues that his counsel was ineffective at trial. It is settled that this Court will not consider ineffective assistance of counsel claims raised for the first time on direct appeal.[2]

(9) Walsh next argues that the evidence seized from his apartment should be suppressed because the warrantless search violated the Fourth Amendment to the United States Constitution.[3] Walsh claims his consent to the search was involuntary because the police threatened to arrest his wife. Because Walsh did not file a motion to suppress the evidence seized from his apartment or object to the admission of that evidence, our review is limited to plain error.[4] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[5] There is nothing in the record to support Walsh's claim that his consent to the search of his apartment was involuntary. We therefore find no

---

[2] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[3] Walsh also refers to Article I, Section 6 of the Delaware Constitution, but does not make any arguments based upon the language or history of the Delaware Constitution. Conclusory assertions that the Delaware Constitution has been violated are waived on appeal. *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005).
[4] Supr. Ct. R. 8; *Brown v. State*, 897 A.2d 748, 752 (Del. 2006).
[5] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

plain error in the Superior Court's admission of the evidence seized at Walsh's apartment.

(10)  Walsh next argues that he was deprived of his right to a fair and impartial trial because Corporal Popp engaged in conduct designed to intimidate the jurors into returning a favorable verdict for the State.  Walsh did not raise this claim below so we review for plain error.[6]  Before the second day of trial, Walsh's counsel informed the Superior Court that a juror may have overheard him speaking with Corporal Popp.  Corporal Popp stated that he would recognize the juror if she came in with the jury, but that he did not believe the woman was a juror in Walsh's case.

(11)  The Superior Court judge asked the parties to give him a signal when the jury came in if they recognized the woman who overheard Corporal Popp and Walsh's counsel.  The record does not reflect that any of the parties recognized the woman on the jury.  The Superior Court also told the jury of the possibility that a juror overheard a conversation between the parties about the case and asked the jurors to indicate whether they had overheard any such conversations.  None of the jurors responded affirmatively.  Nothing in the record supports Walsh's claim that Corporal Popp tried to intimidate the jurors.  There is no plain error.

---

[6] *See supra* n.4.

(12) Finally, Walsh argues that he was not subject to ten year minimum mandatory sentences under 11 *Del. C.* § 1448(e)(1)(c) because Burglary in the Second Degree is not classified as a violent felony under New York law, his previous felony convictions in New York (Burglary in the Second Degree and Assault in the Second Degree) were more than ten years old, and the sentences violated the *Ex Post Facto* Clause of the United States Constitution. Under Section 1448(e)(1)(c), a person who is convicted of PFBPP shall receive a minimum sentence of ten years of Level V if they have been convicted on two or more separate occasions of a any violent felony. Walsh's claims are without merit.

(13) First, Walsh's counsel agreed with the Superior Court at sentencing that Walsh's previous felony convictions constituted violent felonies and subjected Walsh to a ten year minimum mandatory sentence for each PFBPP conviction under Section 1448(e)(1)(c). Contrary to Walsh's contentions, he did not deny that his previous felony convictions subjected him to sentencing under Section 1448(e)(1)(c) at the sentencing hearing. To the extent Walsh argues his counsel was ineffective for failing to argue that his previous felony convictions did not subject him to sentencing under Section 1448(e)(1)(c), we decline to review those claims for the first time on direct appeal.[7] Second, Section 1448(e)(1)(c) does not

---

[7] *See supra* n.2.

require that the previous violent felony convictions occur within ten years of the PFBPP conviction.

(14)   Finally, Walsh's sentence was not imposed retroactively in violation of the *Ex Post Facto* Clause.  "[F]or a criminal or penal law to be *ex post facto*, it must be retrospective, that is, it must apply to events occurring before its enactment."[8]   The sentencing provisions applicable to Walsh were enacted in July 2013.  Walsh's criminal conduct occurred in October 2014.  The sentences do not violate the *Ex Post Facto* Clause.[9]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[8] *Weaver v. Graham*, 450 U.S. 24, 30 (1981).
[9] *Miller v. State*, 2008 WL 187957, at *1 (Del. Jan. 9, 2008) (holding sentence under Section 1448(e) did not apply retroactively in violation of the *Ex Post Facto* Clause where the predicate conviction was in 1998, the applicable sentencing provisions were added in June 2003, and conduct for which defendant was convicted and sentenced occurred in March 2004).

7