IN THE SUPREME COURT OF THE STATE OF DELAWARE

COLT HANDLON,[1]      §

     §

     Respondent Below,      §

     Appellant,      §

     §      No. 317, 2025

     v.      §

     §      Court Below: Family Court

DIVISION OF FAMILY SERVICES      §      of the State of Delaware

and OFFICE OF THE CHILD      §

ADVOCATE,      §      C.A. No. CS24-02-03TS

     §

     Petitioners Below,      §

     Appellees.      §

Submitted: February 4, 2026
Decided: February 12, 2026

Before **SEITZ**, Chief Justice; **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

The Court, having considered the briefs and the record below, and after oral argument, rules as follows:

(1) Colt Handlon ("Father") appeals from a Family Court decision terminating his parental rights in his two minor children. For the first time on appeal, Father raises constitutional arguments. For the reasons explained below, we hold

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

that the court did not plainly err or exceed its discretion in terminating father's parental rights. Thus, we affirm.

(2) Father's minor children ("Minor Children") came under the care of the Division of Family Services ("DFS") in April 2023 after one of the Minor Children ingested fentanyl and cocaine while being cared for by A.S. ("Mother"). The child had to be revived with Narcan.[2] At the time, Father was incarcerated on felony level aggravated menacing charges. His counsel represented to the court that Mother was one of his alleged victims.[3]

(3) Shortly thereafter, DFS created reunification case plans for both Mother and Father. Among other things, Father's plan required him to obtain a psychological evaluation and follow the treatment recommendations.[4] Dr. Joseph Zingaro, who conducted Father's evaluation, testified that he recommended a substance abuse evaluation and anger management training.[5] Over the next two years, the Family Court held interim review and status hearings. At each juncture,

---

[2] *See* App. to Opening Br. at A1 [hereinafter "A__"] (After-Hours Emergency DFS Req. for Custody).

[3] *See* A3 (*Ex Parte* Custody Order on DFS Filings); A12 (Statement of Father's Counsel Waiving Right to Contested Adjudicatory Hr'g).

[4] *See* A65–73 (Father's Reunification Case Plan).

[5] App. to DFS Answering Br. at B9–10 [hereinafter "B__"] (Test. of Dr. Joseph Zingaro).

the court determined that it was in the best interests of the Minor Children to remain in DFS custody.

(4) After being released from custody, Father was re-incarcerated in February 2024 for about one year for violating the terms of his probation.[6] When Father was not incarcerated, he lived with his father, the Minor Children's paternal grandfather ("Paternal Grandfather").[7] Also during this two-year period, the Minor Children's paternal grandmother ("Paternal Grandmother"), who lived in South Carolina, filed a petition for guardianship. South Carolina, however, denied two separate Interstate Compact on the Placement of Children ("ICPC") requests. An approved ICPC request establishes that an out-of-state placement is acceptable to the receiving state.[8]

(5) DFS eventually moved to terminate Mother and Father's parental rights. On May 22, 2025, the Family Court held a final termination of parental rights and guardianship hearing. Even though the Family Court had granted Paternal Grandmother's earlier request for a hearing continuance, she did not appear. The

---

[6] B24–26 (Test. of C. Bowden, Father's Probation Officer); *see also* B74–75 (Test. of A. Hunt-Goodge, DFS Treatment Worker).

[7] *See* B75 (Test. of A. Hunt-Goodge, DFS Treatment Worker); A171 (Test. of Father).

[8] *See* A150–51 (Nov. 25, 2024 ICPC Recons. Denial).

3

Family Court dismissed her guardianship petition.[9]  That dismissal is not challenged on appeal.

(6)    On July 2, 2025, the Family Court issued its written decision terminating Mother's and Father's parental rights.  Only Father appeals that decision. The Family Court began by observing that, "[I]n Delaware, a two-step analysis must be completed when determining whether to terminate parental rights."[10]  First, the court observed, it "must determine that an enumerated statutory basis to terminate parental rights has been established under Title 13, Section 1103(a) of the *Delaware Code*."[11]  Second, it must find that "termination of parental rights is in the child's best interest" under factors provided for in 13 *Del. C.* § 722(a).[12]

(7)    After noting that Mother consented to termination of her parental rights, the Family Court analyzed the statutory basis for terminating Father's parental rights.  Applying a clear and convincing evidence standard, it found that Father "failed to plan adequately for the physical needs or mental health and emotional health and development of [the Minor Children]."[13]  The Family Court supported its

---

[9] A36–38 (Family Ct. Op. Dismissing Paternal Grandmother's Pet. for Guardianship).

[10] Opening Br. Ex. A (Family Ct. Op. on Termination of Parental Rights at 17 [hereinafter "Op."]).

[11] *Id*.

[12] *Id*.

[13] *Id*. at 18; *see* 13 *Del. C.* § 1103(a)(5).

4

conclusion with the following factual findings: "there have been huge gaps in [Father's] contact with the [Minor Children], due to his incarceration;"[14] Father did not "appropriately address[] substance abuse concerns;"[15] and Father had not "engaged in anger management treatment."[16] Although the court considered Father's request for more time to complete his case plan and address his domestic violence concerns, it found that the Minor Children's two year custody status and Father's continuing substance abuse and anger management issues weighed strongly in favor of termination.[17]

(8)     The Family Court also found by clear and convincing evidence that the best interest factors weighed in favor of terminating Father's parental rights. When the Minor Children first came into foster care, the court noted, "they did not understand simple things, such as how to walk on steps or how to walk from grass to a sidewalk." Now, because of "exposure to normal activities," "they run around and play like normal five-year-old kids."[18] In addition, although the Minor Children were still too young to testify about their wishes, the Family Court considered that

---

[14] Op. at 21.

[15] *Id.*

[16] *Id.* at 22.

[17] *See id.* at 22–23.

[18] *Id.* at 25.

the Office of the Child Advocate ("OCA"), which represented the Minor Children, favored terminating parental rights.[19]

(9) While weighing the best interest factors, the court also factored in the possibility of placement with members of Father's extended family. At one time the court believed "that this matter might possibly resolve itself through an award of guardianship to members of Father's extended family in South Carolina."[20] Ultimately, however, the court found that "a home in South Carolina was not approved, and members of the Father's family in South Carolina did not appear for a guardianship hearing[.]"[21] Considering Father's history of domestic violence and failure to address his substance abuse and anger management issues, the Family Court terminated Father's parental rights.

(10) On appeal, Father argues that the trial court erred in terminating his parental rights because it "failed to meaningfully consider alternative remedies." Specifically, Father argues that, "[i]n light of the existence of suitable family and the absence of an adoptive resource to effectuate permanency for the Minor Children," strict scrutiny applied to DFS's motion. According to Father, the State did not demonstrate that terminating his parental rights was the least restrictive means to

---

[19] *Id*. at 24.

[20] *Id*.

[21] *Id*.

advance a compelling State interest.[22]  Notably, Father does not allege a procedural due process violation.[23]

(11)  In response, DFS argues that, as an initial matter, Father did not raise his constitutional argument in the Family Court.  Thus, it should be reviewed for plain error.  Regardless, DFS argues that the State met its burden even if heightened scrutiny was warranted.[24]  DFS contends that, contrary to Father's suggestion, "the trial court considered all available permanency options" for the Minor Children.[25]  Similarly, OCA argues that Father's assertion that the trial court "failed to meaningfully consider alternative remedies" was "unsupported by the record."[26]  In other words, OCA contends, other "alternative remedies" were "not viable."[27]

(12)  Father agrees that his constitutional arguments are reviewed for plain error.[28]  "Plain errors are 'material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which

---

[22] Opening Br. 10.

[23] *Id*. at 35 ("Father concedes that all procedural due process requirements were met . . . .").

[24] *See* DFS Answering Br. 32–47.

[25] *Id*. at 9.

[26] OCA Answering Br. 7.

[27] *Id*.

[28] Oral Argument Video at 4:41–50 ("The Court: You concede that this substantive due process argument was not raised below, is that correct? Counsel: I do concede that this is a plain error standard of review today, yes.").

clearly deprive an accused of a substantial right, or which clearly show manifest injustice.'"[29] As we recently explained in *Suber v. State*, "[t]o consider issues under plain error review, four questions must be answered."[30] Those questions are whether: (i) there is an adequate record; (ii) the error was forfeited and not waived; (iii) the error was plain; and (iv) the error adversely affected the substantial rights of the party.[31]

(13) To resolve Father's argument, we can go straight to whether the Family Court plainly erred by not engaging in strict scrutiny review. "An error cannot be plain 'if neither this Court nor any other binding authority (which . . . includes the United States Supreme Court) has definitively ruled on the issue, and if other courts are divided.'"[32] Father concedes that we have "declined to apply" his proposed heightened scrutiny analysis in two recent cases.[33] Thus, the Family Court could not have plainly erred in applying existing Delaware precedent.

---

[29] *Suber v. State*, __ A.3d __, 2026 WL 184867, at *5 (Del. Jan. 15, 2026) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

[30] *Id*.

[31] *Id*. at *5–6.

[32] *Id*. at *5 (quoting *Johns v. State*, __ A.3d __, 2025 WL 3637521, at *9 (Del. Dec. 16, 2025)).

[33] Opening Br. at 35; *see Sierra v. Dept. of Svs. for Child., Youth & their Fams.*, 238 A.3d 142, 156 (Del. 2020) ("The Supreme Court of the United States has described parental rights as fundamental, but has generally avoided deciding on a particular standard of review for all cases addressing parental rights."); *Schnell v. Dept. of Svs. for Child., Youth & their Fams.*, 338 A.3d 1279, 1286–87 (Del. 2025) (rejecting respondent-appellant's argument that a § 1103 statutory basis

(14) Next, we review the Family Court's decision to see whether the court exceeded its discretion. Under 13 *Del. C.* § 1103(a)(5), if a child is in DFS custody for at least one year and the Family Court finds by clear and convincing evidence that "the parent is unable or has failed to plan adequately for the child's needs, health and development," the court has a statutory basis to terminate parental rights.[34] Here, the Family Court found that Father "failed to adequately plan" because in the two-year period the Minor Children were in DFS custody, there were large gaps in the Father's contact with the Minor Children, and Father failed to address his substance abuse and anger management issues.

(15) In *O'Conner v. Department of Services for Children, Youth and their Families*, we affirmed a Family Court decision to terminate parental rights where the court found that the parents "failed to adequately plan" when "[n]either parent had completed the required parenting classes or been consistent in their mental health or substance abuse treatment."[35] Like *O'Conner*, the record here establishes that Father did not take any steps to address his alcohol and anger management issues,[36] which

---

for terminating parental rights was unconstitutional as applied because it did not incorporate a "least restrictive means" component).

[34] *Powell v. Dept. of Svs. for Child., Youth & their Fams.*, 963 A.2d 724, 731 (Del. 2008).

[35] 82 A.3d 730, 2013 WL 6389794, at *2 (Del. Dec. 5, 2013) (TABLE).

[36] *See* B92 (Test. of Father) (admitting that other than a parenting class, at the time of the final termination hearing, he had not completed any elements of his reunification case plan); App. to OCA Answering Br. at C50–51 [hereinafter "C__"] (Test. of A. Hunt-Goodge, DFS Treatment Worker) (testifying that as of the termination of parental rights hearing, Father "has not been []

is particularly notable because his alcohol relapse in February 2024 was one of the reasons Father's probation officer cited for re-incarceration.[37]

(16) Furthermore, Father was a "perpetrator of domestic violence," which creates a "presumption that precluded [Father] from having legal and physical custody of the [Minor Children]."[38] Father still had "four months" of a "26-week domestic violence program" left to complete,[39] which he did not begin "until the [Minor Children] had been in foster care for almost 2 years."[40] As the Family Court correctly observed, parents are not "afforded an indefinite amount of time to complete their reunification case plans."[41] And under federal law, "in the case of a child who has been in foster care under the responsibility of the [s]tate for 15 of the most recent 22 months," the state is required to file a petition to terminate parental

---

compliant with the case plan that was put before him and he still has not completed any element expect for parenting class . . . .").

[37] *See, e.g.*, C19–21 (Test. of C. Bowden, Father's Probation Officer) (testifying that Father was "unsuccessfully discharged from the American Treatment Network" because "he did not make it to several appointments and continued to test positive for alcohol").

[38] *Butler v. Evans*, 246 A.3d 556, 2021 WL 245258, at *2 (Del. Jan. 25, 2021) (TABLE) (citing 13 *Del. C.* § 705A ("Notwithstanding other provisions of this title, there shall be a rebuttable presumption that no perpetrator of domestic violence shall be awarded sole or joint custody of any child.")).

[39] Op. at 23.

[40] *Id*. at 27.

[41] *Id*. at 22.

rights.[42] Here, it is undisputed that the Minor Children were in DFS custody since April 2023.

(17) In addition to a statutory basis for termination, the Family Court did not exceed its discretion when it found, by clear and convincing evidence, that it was in the best interests of the Minor Children to terminate Father's parental rights. The factors the Family Court uses to determine whether termination is in a child's best interest are set forth in 13 *Del. C.* § 722. There is no real dispute that, based on the record before the Family Court, these factors weighed heavily in favor of terminating Father's parental rights.

(18) Father's argument on appeal is largely focused on the court's decision to not place the Minor Children with family members – the third factor. The Family Court "believed at one point that this matter might possibly resolve itself through an award of guardianship to members of Father's extended family in South Carolina."[43] But South Carolina denied two separate ICPC requests to place the Minor Children with their Paternal Grandmother. The second ICPC denial notes that Paternal Grandmother "has demonstrated [a] continued lack of motivation and cooperation" and neither she nor her household members had "completed fingerprint background

---

[42] 42 U.S.C. § 675(5)(E).

[43] Op. at 24.

11

checks, nor provided forms and information requested."[44] As the Family Court judge explained to Paternal Grandmother, a "Delaware judge cannot place [the Minor Children] in your home and grant you guardianship in South Carolina unless South Carolina approves[.] That's the law."[45] The ICPC denials aside, the Paternal Grandmother missed a scheduled virtual visit with the Minor Children on their birthday,[46] refused to meet with the Minor Children when she was in Delaware,[47] and failed to appear at the May 2025 guardianship hearing, despite receiving a continuance of the first hearing. No one other than Paternal Grandmother petitioned the court for guardianship of the Minor Children. To the extent Father contends that DFS should have done more to encourage Paternal Grandfather to become an adoptive resource, we note that, because Father continues to reside with Paternal Grandfather, the same statutory policy preventing placement with Father applies to Paternal Grandfather.[48]

---

[44] A151 (Nov. 25, 2024 ICPC Recons. Denial).

[45] A133 (Post-Permanency Hr'g Tr.).

[46] C61–62 (Test. of V. Siegel, Foster Parent).

[47] C55–56 (Test. of J. Jackson, DFS Permanency Worker).

[48] *See* 13 *Del. C.* § 705A(b) ("Notwithstanding other provisions of this title, there shall be a rebuttable presumption that no child *shall primarily reside with* a perpetrator of domestic violence.") (emphasis added).

(19) The Family Court took great care to consider the best interests of the Minor Children and Father's life circumstances that prevented him from providing for their appropriate care. The court did not plainly err or exceed its discretion in terminating Father's parental rights in the Minor Children.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice

13