IN THE SUPREME COURT OF THE STATE OF DELWARE

| | | |
|---|---|---|
| BERNARD ELLERBE, | § | |
| | § | No. 453, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court of the |
| | § | State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1406020386 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: March 2, 2017
Decided: May 8, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 8th day of May 2017, upon consideration of the parties' briefs, the appellant's post-briefing submission filed on March 2, 2017, and the record on appeal, it appears to the Court that:

(1) The appellant, Bernard Ellerbe, filed this appeal from the Superior Court's order of August 2, 2016, denying his first motion for postconviction relief under Superior Court Criminal Rule 61.[1] We conclude there is no merit to the appeal and affirm the Superior Court's judgment.

(2) On June 25, 2014, Ellerbe was stopped after police observed him

---

[1] *State v. Ellerbe*, 2016 WL 4119863 (Del. Super. Aug. 2, 2016).

engage in an apparent hand-to-hand drug transaction through his car window. Ellerbe sped away when the police approached his car, and in the high-speed evasion that ensued, Ellerbe wrecked his car. When removing Ellerbe from the wreckage, the police found more than 260 individual glassine bags of heroin in Ellerbe's lap and nearly $12,000 in his pockets.

(3)     Ellerbe was indicted for several drug offenses and on charges of reckless endangering, reckless driving, and disregarding a police signal. The drugs seized from Ellerbe were sent to a Drug Enforcement Administration ("DEA") laboratory where they were analyzed by a forensic chemist on December 17, 2014.

(4)     Ellerbe went to trial in late January 2015. A week before trial, an official from the DEA disclosed to the prosecutor that, on July 1, 2014, the DEA's Board of Professional Conduct issued a two-day suspension without pay to the forensic chemist who analyzed the drugs in Ellerbe's case in December 2014. The disciplinary sanction arose from the forensic chemist's alleged violation of a DEA safety protocol when handling drug evidence in a case in November 2013. Because the forensic chemist was a key witness in the State's case against Ellerbe and evidence about the safety violation, if permitted by the court, could be used by the defense to impeach the chemist at trial, the prosecutor informed defense counsel

2

about the disciplinary sanction.[2]

(5)     Under Delaware Uniform Rule of Evidence 403 ("DRE 403"), before evidence can be used to impeach the credibility of a witness, the Superior Court must determine if the probative value of the evidence outweighs its prejudicial effect.[3] To make the determination under DRE 403 in Ellerbe's case, the trial judge conducted *voir dire* of the chemist, outside the presence of the jury, to determine if Ellerbe's defense counsel should be allowed to use evidence of the disciplinary sanction to impeach the chemist at trial.

(6)     During *voir dire*, the chemist testified that the disciplinary matter arose from her alleged violation of a DEA safety policy when she neglected to wear a protective mask when testing a large quantity of cocaine in 2013. The chemist testified that her appeal from the Board's decision was still pending before a DEA appeals official, and that, for the pendency of the disciplinary matter, she continued examining drug evidence for the DEA and to testify in cases. The chemist further testified that, if the Board's decision is upheld by the appeals official, she will continue in her duties with the DEA, and that there was no allegation that she failed to follow any protocol in Ellerbe's case.

---

[2] *See Giglio v. United States*, 405 U.S. 150, 153–54 (1972) (holding that the prosecutor's nondisclosure of material evidence affecting a witness' credibility, which goes uncorrected, falls within the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963)).

[3] *See* Del. Unif. R. Evid. 403 (governing exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time).

(7)     At the conclusion of *voir dire*, defense counsel advised the court and opposing counsel that he would not be moving to use evidence of the disciplinary sanction to impeach the chemist because, in counsel's view, the evidence was not relevant in Ellerbe's case.  In this excerpt from the *voir dire* transcript, the trial judge agreed with defense counsel's assessment as follows:

> That's fine, I think that's appropriate after hearing the entirety of it. Under Rule 403 I do believe that probative value would be substantially outweighed by the danger of unfair prejudice in this particular case, mainly confusing the issues and really trying to have some mini trial of a personnel matter that hasn't even been fully determined yet. If there's a question as to a circumstance of not following protocol that changed the weight, the analysis or something like that, it may be more probative, but in this case, it's quite frankly not taking a safety precaution that she should have taken during testing.
>
> * * *
>
> And as noted through the testimony and cross-examination, even that matter and whether or not she will be held to some sanction from her own agency for violating some safety protocol or laboratory protocol of their own and again, had nothing to do with the validity of the actual testing, findings or the like, but their own personal safety standard that they set, then the court might find some greater probative value.
>
> If not, and I think that the defense is absolutely correct in understanding that this probably would not lead to anything that is useful, and therefore I think it is appropriate to be excluded under Rule 403, even if there was a request to put it in.[4]

(8)     When trial resumed, the chemist took the stand and testified about the tests she conducted on the drug evidence seized in Ellerbe's case and the scientific

---

[4] Trial Tr. at 23–25 (Jan. 30, 2015).

4

method she used to determine that the evidence was heroin with a net weight of 3.8 grams. In relevant part, the chemist explained that, after analyzing 27 of the 262 individual glassine bags and finding that 27 bags contained heroin, she used a hypergeometric sampling method to determine with 95% accuracy that 90% of the remaining 235 bags also contained heroin.[5]

(9)     On January 30, 2015, the jury convicted Ellerbe of Drug Dealing, Aggravated Possession of Heroin, Possession of Drug Paraphernalia, Reckless Endangering First Degree, Disregarding a Police Officer's Signal, and Reckless Driving. On May 29, 2015, following a presentence investigation, the Superior Court sentenced Ellerbe as follows: Drug Dealing and Aggravated Possession[6]— twenty-five years at Level V, suspended after fifteen years for ten years at Level IV, suspended after six months for eighteen months at Level III; Reckless Endangering—one year and six months at Level V for each of two counts; Disregarding a Police Officer's Signal—two years at Level V, suspended for one year at Level III; Possession of Drug Paraphernalia— six months at Level V, suspended for six months at Level III for Possession of Drug Paraphernalia. All told

---

[5] *See generally State v. Roundtree*, 2015 WL 5461668, at *2 (Del. Super. Sept. 17, 2015) (explaining that hypergeometric sampling methodology is a mathematical formula that allows a laboratory to test a portion of a quantity of drugs and, based upon those results, infer certain conclusions about the untested portion of the drugs. If a certain number of randomly selected samples are tested and all test positive, it is probable that most of the remaining items would likewise test positive if actually tested.)

[6] The Drug Dealing and Aggravated Possession convictions merged for purposes of sentencing.

the sentence imposed eighteen years of unsuspended Level V time. Ellerbe filed a direct appeal of his convictions but then voluntarily dismissed the appeal to pursue postconviction relief with the assistance of new privately-retained counsel.

(10) In December 2015 and February 2016, Ellerbe's privately-retained postconviction counsel filed a motion and an amended motion for postconviction relief. The motion, as amended, alleged one claim—that defense counsel's decision not to seek to impeach the chemist with evidence of the disciplinary sanction was ineffective assistance of counsel.

(11) To prevail on his ineffective counsel claim, Ellerbe had to show that defense counsel's "representation fell below an objective standard of reasonableness" and that Ellerbe was prejudiced as a result of counsel's deficient representation.[7] To meet the first objective, Ellerbe argued that defense counsel's decision to forego using the impeachment evidence was unreasonable because withholding evidence that the chemist had improperly handled drug evidence in another case deprived the jury of crucial evidence to evaluate the chemist's credibility in Ellerbe's case. To meet the second objective, Ellerbe argued that defense counsel's error was prejudicial because the chemist's testimony was key to proving the elements of the most serious drug charges, and if Ellerbe had the

---

[7] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

6

opportunity to challenge the chemist's credibility, there was a reasonable chance the jury would not have convicted Ellerbe of those charges.

(12) Ellerbe's postconviction motion was referred to the Superior Court judge who presided over Ellerbe's trial. The trial judge directed defense counsel to file an affidavit in response to the allegation of ineffective assistance of counsel and the State to file a response to the motion. After those pleadings were filed, postconviction counsel filed a reply.

(13) By order dated August 2, 2016, the Superior Court denied the postconviction motion after analyzing the ineffective counsel claim and concluding it was without merit. The court determined, first, that it was reasonable for defense counsel to conclude that the chemist's disciplinary sanction was of little value in Ellerbe's case. The violation reflected little about the validity of the testing in the 2013 case, and the violation took place in November 2013 more than a year before the chemist's involvement in Ellerbe's case.

(14) On the question of prejudice, the court determined that Ellerbe was not prejudiced by defense counsel's decision not to impeach the chemist with the disciplinary sanction. The court concluded that it was unlikely that additional cross-examination of the chemist would have overcome the other evidence in Ellerbe's case, which included the police officers' visual observations of the drug transaction, Ellerbe's high-speed evasion of the police, the large amount of heroin found in

7

Ellerbe's lap, and the large amount of cash found in his pockets. Moreover, the court acknowledged its prior determination, at *voir dire*, that if defense counsel had sought to impeach the chemist with evidence of the disciplinary sanction, the court likely would have ruled the evidence inadmissible under DRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

(15)  On appeal from the Superior Court's denial of postconviction relief, Ellerbe has raised two claims of ineffective assistance of counsel. First, in his opening brief, Ellerbe claims that his defense counsel's decision not to use the impeachment evidence was ineffective assistance of counsel. Second, in his post-briefing submission, Ellerbe claims that his defense counsel's failure to challenge the chemist's use of the hypergeometric sampling method also was ineffective. Because Ellerbe's second claim of ineffective assistance was not raised in his postconviction motion, our review of the claim is limited to plain error.[8]

(16)  The record does not reflect plain error in connection with Ellerbe's second claim of ineffective assistance of counsel. First, the record does not reflect, as Ellerbe claims, that defense counsel failed to challenge the chemist's use of the hypergeometric sampling method when analyzing the drugs in Ellerbe's case. Rather, the record reflects that defense counsel questioned the chemist on the

---

[8] Del. Supr. Ct. R. 8. *See Trump v. State*, 753 A.2d 963, 971 (Del. 2000) (citing *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) providing that plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial"))).

reliability of the hypergeometric method and the accuracy of the chemist's findings. Second, the chemist testified that the hypergeometric method is considered reliable by the scientific community, and that she followed normal laboratory procedures when using the method in Ellerbe's case. Under DRE 702, a qualified expert need only testify that any test used as a basis for the expert's opinion is reasonably relied upon by experts in her field. [9] That standard was met here.

(17) As for Ellerbe's first claim of ineffective assistance of counsel, which was thoroughly litigated in the postconviction proceeding, after careful consideration of the parties' briefs we conclude that the claim is without merit for the reasons stated in the Superior Court's order of August 2, 2016. Ultimately, the Superior Court determined, and we agree, that "[w]ith no specifics offered as to how the additional cross-examination now suggested would have changed the outcome of the trial, Ellerbe cannot succeed on a claim of ineffective assistance of counsel."[10]

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_____
Justice

---

[9] *See* Del. Unif. R. Evid. 702 (governing testimony by experts). *Santiago v. State,* 510 A.2d 488, 490 (1986).

[10] *Supra* note 1, at *4.

9