IN THE SUPREME COURT OF THE STATE OF DELAWARE

JEFFREY KENT, §
§ No. 8, 2018
Defendant Below- §
Appellant, §
§
v. § Court Below—Superior Court
§ of the State of Delaware
STATE OF DELAWARE, §
§ ID. No. 1302002915 (N)
Plaintiff Below- §
Appellee. §

Submitted: April 18, 2018
Decided: June 26, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## **O R D E R**

This 26th day of June 2018, upon consideration of the appellant's Supreme Court Rule 26(c) brief, his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1)   In September 2014, a Superior Court jury convicted the defendant-appellant, Jeffrey Kent, of Murder in the First Degree and Possession of a Firearm During the Commission of a Felony ("PFDCF"). After denying Kent's motions for judgment of acquittal and for a new trial,

the Superior Court sentenced Kent to life imprisonment plus a term of years. This Court affirmed his convictions and sentence on direct appeal.[1]

(2) Kent filed a motion for postconviction relief and a motion for appointment of counsel in April 2016. The Superior Court appointed counsel to represent him and gave appointed counsel the opportunity to file an amended motion under Rule 61. The amended motion raised three claims of ineffective assistance of trial counsel. After obtaining responses from Kent's trial counsel and from the State, as well as Kent's reply, a Superior Court Commissioner issued a report on September 5, 2017, recommending that Kent's amended motion for postconviction relief be denied.[2] On December 5, 2017, the Superior Court adopted the Commissioner's report and recommendation and denied Kent's motion. This appeal followed.

(3) On appeal, Kent's counsel has filed a brief and a motion to withdraw under Rule 26(c). Appellate counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, appellate counsel informed Kent of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Kent also was informed of his right to

---

[1] *Kent v. State*, 2016 WL 1039125 (Del. Mar. 11, 2016).
[2] *State v. Kent*, 2017 WL 3891448 (Del. Super. Sept. 5, 2017).

supplement his attorney's presentation. In response to appellate counsel's motion and brief, Kent has raised several issues for this Court's consideration. The State has responded to Kent's points, as well as to the position taken by Kent's counsel, and has moved to affirm the Superior Court's judgment.

(4) The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) this Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (b) this Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[3]

(5) The following recitation of facts is taken from this Court's decision on Kent's direct appeal:

> On June 30, 2011, Dewey Lee was stopped at the intersection of West 8th and Monroe Streets in Wilmington, Delaware. While he was stopped, a man on a bicycle approached his vehicle and began speaking with him. At some point during the conversation, the man on the bicycle shot Lee. Lee's vehicle then accelerated west on 8th Street before striking a utility pole. The man on the bicycle fled north on Monroe Street.
> When the Wilmington Police responded to the scene, they found Lee behind the wheel of his vehicle. He was unresponsive and bleeding from a gunshot wound to his torso. He died as a result. During the investigation, the Wilmington Police located three eyewitnesses:

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

Thurman Boston, Brianna Brown ("Brianna"), and Dajuan'ya Brown ("Dajuan'ya"). All three identified Kent as the man on the bicycle.

In February 2013, Kent was indicted on charges of Murder in the First Degree and PFDCF. Two attorneys from the Public Defender's Office ("PDO") were appointed to represent him. Shortly after being appointed, Kent's counsel sent the State a discovery request, which included a request for a list of the State's witnesses. The State responded, but did not provide a list of witnesses, citing concerns for the witnesses' safety. This concern may have received some confirmation in May 2014 when Wilmington Police came into possession of a letter from Kent requesting that his nephew locate the witnesses to the crime.

On July 16, 2014, defense counsel again requested a witness list. One reason defense counsel requested the names of the witnesses was to identify potential conflicts of interest. The State requested a protective order for the witness list on July 29, 2014, protecting against disclosure of the names to the defendant. In the weeks that followed, a number of witness statements were provided to Kent's attorneys.

Jury selection was scheduled to begin on September 8, 2014. On September 2, 2014, the State provided the transcript of Monica Miller's statement wherein she stated that she was with Brianna and Dajuan'ya at the time of the incident and that one could not see the intersection of 8th and Monroe from their vantage point.

On September 6, 2014, the State advised Kent's trial counsel that the statements of Wallace Archy, Dexter Briggs, and Raheem Smith would not be disclosed because the statements contained no Brady material. The next day, the State changed its position and provided Archy's and Smith's statements. In his statement, Archy stated that the shooting occurred at a different intersection, 8th and Washington. Smith told police that he did not see a white person at 8th and Monroe (the victim was white), and that it was impossible to see the intersection from where Brianna and Dajuan'ya were located.

On the same day that the Archy and Smith statements were disclosed, Kent filed a motion to dismiss, alleging that the Miller, Archy, and Smith statements contained Brady material, which was disclosed in an untimely manner and prevented defense counsel from using the evidence effectively. The following day, the trial court held a hearing on the motion. The trial court denied Kent's motion because Kent's trial counsel had been provided the witnesses' statements, and the State was making all three witnesses available to be interviewed by defense

4

counsel. The jury was selected on September 8, 2014, and trial commenced on September 10, 2014.

During pretrial proceedings, the trial court also heard arguments regarding a potential conflict of interest resulting from the PDO's representation of Boston in an unrelated matter. At the trial court's request, Kent filed a memorandum of law requesting that the PDO be allowed to withdraw as Kent's counsel, or in the alternative, prohibiting Boston from being called as a witness. On August 26, 2014, the trial court requested additional information in support of Kent's motion for an in-camera review. Kent's trial counsel declined to provide the additional information requested on the grounds that Boston did not give permission to release confidential information. On September 2, 2014, the trial court reminded Kent's trial counsel that it could reveal Boston's confidential information upon court order, but counsel did not respond or comply with the trial court's request until after the trial court informed counsel of its decision to deny the request.

The trial court issued an opinion denying Kent's motion to prohibit Boston from being called as a witness or for appointment of new counsel on September 3, 2014. The representation of Boston had concluded by March of 2014, approximately six months before Kent's trial. The trial court found that Kent's trial counsel failed to meet their burden of showing that a conflict did exist because the only evidence offered was an alleged conflict due to Boston's mental health history, which the trial court determined was public knowledge. Without any other evidence, the trial court held that there was no actual conflict regarding the representation of Boston on the unrelated charges.

At trial, Boston testified for the State that he was behind Lee at the intersection and that Kent was the shooter. Brianna and Dajuan'ya both testified that they saw Kent from the stoop of their home at 814 West 8th Street. Miller testified for the defense that she was with Brianna and Dajuan'ya at the time of the incident, and that one could not see the intersection of West 8th and Monroe from the steps of 814 West 8th Street. Archy, also called by the defense, testified that he was on Monroe Street between 7th and 8th on the evening of the incident. He further testified that he did not observe Lee's vehicle stopped at the intersection and that he saw it speed through the intersection. Although Kent's trial counsel was able to interview Smith, he was not called as a witness.

During closing arguments, Kent's trial counsel implied that Boston may have received a benefit for testifying against Kent. Trial

5

counsel also implied that Boston changed his story to comport with Brianna and Dajuan'ya. In response, the State argued that the jury could only believe trial counsel's suggestion if the jurors were to violate the rule on speculation because there was no evidence that Boston received a benefit, only that he was hoping for help with his case. The State also argued that there was no evidence presented to support a finding that Boston changed his story to appear more credible.

The State also argued that Kent's trial counsel did not read the entire redacted letter that Kent had written to his nephew, a statement which was not correct. After the trial court admonished the State regarding the inaccuracy of its statement, the State informed the jury that it was mistaken and that Kent's trial counsel had, in fact, read the entire letter. Shortly after, the State argued that Archy heard a gunshot and immediately saw a vehicle travel through the intersection. After it was brought to the State's attention that this was incorrect, the State informed the jury that there was a ten to fifteen second delay between the gunshot and when Archy saw the vehicle speed through the intersection. Kent was convicted of Murder in the First Degree and PFDCF.

(6) On direct appeal, Kent raised three issues. First, he argued that the State committed a *Brady*[4] violation by not providing the statements of three witnesses in a timely fashion. Second, he argued that the prosecutor engaged in misconduct during closing arguments. Finally, he asserted that the trial court erred in denying the motion to withdraw as counsel or, alternatively, to preclude the testimony of Boston. We rejected all three claims.[5]

(7) In his amended postconviction motion, Kent also raised three issues. First, he asserted that his trial counsel was ineffective for failing to investigate and call two witnesses who could have provided exculpatory

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).
[5] *Kent v. State*, 2016 WL 1039125, at *3-4.

6

testimony. Second, he argued that trial counsel was ineffective for failing to present evidence to corroborate Monica Miller's testimony that the intersection of 8th and Monroe Streets was not visible from the steps of 814 W. 8th Street, in order to discredit the eyewitness identification of Brianna and Dajuan'ya Brown. Finally, Kent argued that his trial counsel was ineffective for failing to call Siron Chambers as a witness because Chambers had provided a statement to the police on July 3, 2011 admitting that he and his girlfriend had attempted to steal the victim's wallet after his truck crashed near their house and that he never saw Kent (whom he knew) in the area.

(8) After trial counsel filed an affidavit and the State filed its response to the amended motion, Kent's postconviction counsel filed a reply and withdrew the first two claims raised in the amended motion.[6] Accordingly, the Commissioner deemed those claims to be waived and only addressed the third argument. The Commissioner concluded, after considering the entirety of Chambers' police statement, that trial counsel was not ineffective for deciding not to call Chambers as a witness. The Superior Court adopted the Commissioner's reasoning and denied Kent's motion.

---

[6] As postconviction counsel explains, he did not have access to trial counsel's case log and contemporaneous notes at the time the amended postconviction motion was prepared. After receiving the notes and trial counsel's affidavit, postconviction counsel found no good faith basis to pursue the first two claims.

(9) On appeal, Kent raises four claims in response to his counsel's Rule 26(c) brief. First, he contends that his trial counsel was ineffective for failing to request a continuance to corroborate the testimony of favorable defense witnesses. Second, he contends that his trial counsel was ineffective for failing to request lesser included offense jury instructions on second degree murder or manslaughter. Third, he contends that the evidence was insufficient to find him guilty of first degree murder because there was no evidence of intent. Finally, he contends that his trial counsel was ineffective for failing to provide the Superior Court with the additional information that was requested concerning the PDO's conflict of interest arising from its former representation of Boston.[7]

(10) As the State correctly points out in its response, in the absence of plain error, this Court will not consider on appeal any issue that was not raised and considered by the trial court in the first instance.[8] Plain error exists when the error complained of is apparent on the face of the record and is so prejudicial to a defendant's substantial rights as to jeopardize the integrity and fairness of the trial.[9]

---

[7] Kent does not challenge the Superior Court's rejection of the claim he argued below concerning Siron Chambers. Thus, he has waived further review of that claim. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)

[8] Del. Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[9] *Wainwright v. State*, 504 A.2d at 1100.

(11)  With respect to Kent's claim challenging the sufficiency of the evidence to convict him of first degree murder, we hold that this claim is procedurally barred.  Superior Court Criminal Rule 61(i)(4) bars reconsideration of any previously adjudicated claim.  Kent filed a motion for judgment of acquittal after the jury rendered its verdict.  His motion was denied, and he did not appeal that ruling.  Under the circumstances, his claim is barred as previously adjudicated, and he has failed to overcome that procedural hurdle under Rule 61(i)(5).[10]

(12)  With respect to Kent's three new claims of ineffective assistance of counsel, we find no plain error.  Kent first argues that counsel was ineffective for failing to request a continuance to investigate corroborating, favorable defense witnesses.  But Kent does not identify who these corroborating witnesses are or what favorable corroborating testimony they could have provided.  This vague and conclusory allegation is insufficient to establish a claim of ineffective assistance of counsel.[11]

---

[10] Under Rule 61(i)(5), the procedural bars of Rule 61(i)(1)-(4) do not apply to a claim that the trial court lacked jurisdiction or to a claim alleging new evidence creating a strong inference of actual innocence or to a claim that a new, retroactively-applicable rule of constitutional law renders the defendant's conviction invalid.

[11] *See Younger v. State*, 580 A.2d 552, 555 (Del. 1980) (holding that the burden is on the defendant in a postconviction proceeding to make concrete allegations of cause and actual prejudice to substantiate a claim of ineffective assistance of counsel or else risk summary dismissal).

(13)   Moreover, we find no plain error with respect to counsel's failure to request lesser included offense instructions.  Kent's defense at trial was that he was not the shooter.  Lesser included offense instructions would have been inconsistent with Kent's mistaken identity defense.  We thus find no plain error in counsel's failure to request lesser included offense instructions.[12]

(14)   Finally, Kent argues this trial counsel was ineffective for failing to provide additional information requested by the trial judge about the PDO's alleged conflict of interest arising from its former representation of Boston.  The record reflects that counsel did provide the information, under seal, but did not do so until after the trial court had denied the motion.  Kent does not argue, and there is nothing in the record to reflect, that the Superior Court would have granted counsel's motion if the information had been provided sooner.  Under the circumstances, we find no plain error.

(15)   We have reviewed the record carefully and conclude that Kent's appeal is wholly without merit and devoid of any arguably appealable issue.  We also are satisfied that Kent's counsel has made a conscientious effort to examine the record and the law and has properly determined that Kent could not raise a meritorious claim in this appeal.

---

[12] *See Allison v. State*, 2010 WL 3733919, *2 (Del. Sep. 24, 2010) (finding counsel was not ineffective for not requesting an LIO instruction because it would have been inconsistent with the defendant's actual innocence defense).

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice