WAYNESLEY SIMON, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 311, 2009.
Supreme Court of Delaware.
Submitted: November 3, 2009.
Decided: November 25, 2009.
Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

ORDER
JACK B. JACOBS, Justice.
This 25th day of November 2009, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Waynesley Simon ("Simon"), the defendant-below, appeals from a final judgment of conviction entered by the Superior Court. Simon was charged with, and found guilty of, one count of Possession of a Deadly Weapon by a Person Prohibited ("PDWPP"), a class F felony, under 11 Del. C. § 1448(a)(1). On appeal, Simon claims that the trial court erred in denying his motion for judgment of acquittal, because there was insufficient evidence that he possessed a "deadly weapon." Since a bow and arrow is inherently a "deadly weapon," we affirm.
2. On November 19, 2008, Simon, a licensed hunter, was using a bow and arrow for deer hunting. Simon was a "person prohibited" because of a prior felony theft conviction in June 2008. Thomas Penuel of the Delaware Division of Fish and Wildlife, discovered and arrested Simon for PDWPP. When patrol agents initially encountered Simon, he told the agents that he had just been moving deer stands. The agents used a K-9 dog to track a blood trail from Simon's deer stand to a wounded deer. Simon then assisted the agents in retrieving his bow that he had left in the woods. After a one day bench trial, the court found, in a bench ruling, that Simon was guilty of the offense charged. This appeal followed.
3. The issue is whether the Superior Court erred in denying Simon's motion for judgment of acquittal because he did not possess a "deadly weapon." Raising an issue of first impression for this Court,[1] Simon claims that a bow and arrow does not qualify as a "deadly weapon," as that term is defined in 11 Del. C. § 222(5). We review the denial of a motion for a judgment of acquittal de novo, to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[2] Questions of statutory interpretation are also reviewed de novo.[3]
4. As originally enacted, Section 222(5) defined "deadly weapon" as including a list of specified items.[4] A bow and arrow was not included as one of those specified items. This Court held that the word "includes" in Section 222(5) indicates that the list was to be regarded as illustrative, not exhaustive.[5] Therefore, "in appropriate cases the word or term may be defined in any way not inconsistent with the definition given."[6]
5. In 1992, the General Assembly amended Section 222(5), by adding to the list any item classified as a "dangerous instrument." Thus, "deadly weapon" now also included "any dangerous instrument ... which is used, or attempted to be used, to cause death or serious physical injury."[7] As a result, even ordinary items that serve a legitimate function in daily life could be "deadly weapons" if, in the circumstances that they are used, they could inflict death or serious physical injury.[8]
6. In its present form, Section 222(5) states:
"Deadly weapon" includes a firearm, as defined in paragraph (12) of this section, a bomb, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick or any dangerous instrument, as defined in paragraph (4) of this section, which is used, or attempted to be used, to cause death or serious physical injury. For the purpose of this definition, an ordinary pocketknife shall be a folding knife having a blade not more than 3 inches in length.
7. The trial court employed two alternative theories to conclude that a bow and arrow is a deadly weapon, namely, that a bow and arrow qualifies as either a "firearm" or as a "dangerous instrument." On appeal, the State argues that a bow and arrow is "by its very nature" a deadly weapon, without any need further to reference the definition of either "firearm" or "dangerous instrument."
8. This Court has made clear that the list of weapons in Section 222(5) is intended to be illustrative, not exhaustive.[9] Thus, the absence of a bow and arrow from the list does not establish, as Simon urges, that the General Assembly did not view it as a "deadly weapon." As we have previously stated, "[i]t would be impossible to describe each item which may be properly regarded as a deadly weapon but it is clear that statutes such as this seek to encompass `the classic instruments of violence and their homemade equivalents.'"[10]
9. Nor, did the statutory amendment adding "dangerous instruments" to the definition of "deadly weapon" make the list in Section 222(5) exhaustive. Rather, the "General Assembly [merely] intended to add to the specific list of deadly weapons any item [of common use] which had previously fallen within the designation of dangerous instrument."[11]
10. Because a bow and arrow normally has no other purpose but to kill or seriously injure, its common usage is as a deadly weapon.[12] The Superior Court recognized this, noting that:
Now, I will tell you if he loads that arrow and pulls back, everybody in the room is going to duck. Why are we going to duck? That may kill us.
It therefore is consistent with Section 222(5)'s definition of a "deadly weapon"[13] to hold that a bow and arrow is an inherently dangerous weapon.
11. When construing a criminal statute, this Court must consider the Criminal Code's general purpose "[t]o give fair warning of the nature of the conduct proscribed."[14] A fact finder could reasonably conclude from the evidence that Simon himself understood that his bow and arrow was a "deadly weapon" that he should not possess. Simon initially lied to the patrol agents that he had been out hunting, and he hid his bow in the woods.
12. Because we conclude that a bow and arrow is inherently a "deadly weapon," we need not address the alternative grounds raised for holding that a bow and arrow is a "deadly weapon." Thus we do not decide whether a bow and arrow together qualify as a "firearm" as defined under 11 Del. C. § 222(12).[15] Nor do we address whether a bow and arrow is a "dangerous instrument." Accordingly, we need not, and do not, reach Simon's argument that to be convicted of PDWPP, the defendant must use, intend to use, or threaten to use the dangerous instrument to cause death or serious bodily injury to another human being.[16]
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Two Superior Court cases have addressed this issue, with completely opposite results. See Kipp v. State, 704 A.2d 839, 841 (Del. 1998) (recounting that the Superior Court dismissed two counts of possession of a deadly weapon by a person prohibited because hunting bows were not deadly weapons); and State v. Buoncuore, 2002 WL 1288786, at *1 (Del. Super. Ct. May 22, 2002) (holding that a bow and arrow is a deadly weapon because it is a "firearm" as defined in 11 Del. C. § 222(12)).
[2] Monroe v. State, 652 A.2d 560, 563 (Del.1993) (citations omitted).
[3] Dickerson v. State, 975 A.2d 791, 797 (Del. 2009).
[4] 11 Del. C. § 222(5) (1973) originally read: "`Deadly weapon' includes any weapon from which a shot may be discharged, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick." 59 Del. Laws ch. 203 (1973). In 1981, the Legislature amended this definition in response to a vagueness challenge brought in Upshur v. State, 420 A.2d 165, 168 (Del. 1980), even though this Court rejected the claim that a "knife of any sort" was unconstitutionally vague. The Legislature added that "[f]or the purpose of this definition, an ordinary pocketknife shall be a folding knife having a blade not more than 3 inches in length." 63 Del. Laws ch. 92 (1981).
[5] Taylor v. State, 679 A.2d 449, 453 (Del. 1996); Johnson v. State, 711 A.2d 18, 27 (Del. 1998).
[6] 11 Del. C. § 221(b); see also Taylor, 679 A.2d at 453 (discussing the use of Section 221(b) in construing "deadly weapon").
[7] 68 Del. Laws ch. 378 (1992). The amendment was intended to close a loop hole whereby murders and assaults could be committed with common objects such as bowling balls and baseball bats, but the defendant could not be convicted of possession of a deadly weapon during the commission of a felony.
[8] Johnson, 711 A.2d at 27.
[9] Taylor, 679 A.2d at 453; Johnson, 711 A.2d at 27.
[10] Pauls v. State, 476 A.2d 157, 160 (Del. 1984).
[11] Taylor, 679 A.2d at 454.
[12] See Buoncuore, 2002 WL 1288786, at *1 ("A bow and arrow is a weapon designed to kill its target.").
[13] See 11 Del. C. § 221(b) ("[I]n appropriate cases the word or term may be defined in any way not inconsistent with the definition given.").
[14] 11 Del. C. § 201(2).
[15] "Firearm," as defined under 11 Del. C. § 222(12), "includes any weapon from which a shot, projectile or other object may be discharged by force of combustion, explosive, gas and/or mechanical means." Although an arrow is a projectile, we do not decide whether or not a bow operates by "mechanical means."
[16] See 11 Del. C. §222(4) defining an instrument as dangerous according to the circumstances of its use. See also Carter v. State, 933 A.2d 774, 778 (Del. 2007) ("[T]he General Assembly must have intended that the fact finder consider the actual circumstances and not any conceivable circumstance under which the instrument might have been used. The `circumstances' to be considered must include the actor's intent and manner of use.").