IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GARY JONES, | § | |
| | § | No. 429, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. Nos. 1706012725 |
| STATE OF DELAWARE, | § | 1708022021 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 30, 2019
Decided: January 7, 2020

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

**O R D E R**

On this 7th day of January 2020, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    Appellant, Gary Jones, appeals from a Superior Court jury verdict finding him guilty of Aggravated Menacing, Possession of a Deadly Weapon During the Commission of a Felony (PDWDCF), Terroristic Threatening, Unlawful Imprisonment Second Degree, Assault Third Degree, Endangering the Welfare of a Child, and two counts of Breach of Conditions of Bond During Commitment.  He sets forth two claims.  The first is that the State presented insufficient evidence to support a jury finding that he displayed what appeared to be a deadly weapon or that he possessed a deadly weapon, which are elements, respectively, of Aggravated

Menacing and PDWDCF. The second is that the State failed to present sufficient evidence to support a jury finding that his detention in lieu of bail was in connection with a felony charge, which is an element of the offense of Breach of Conditions of Bond During Commitment. We find no merit to either claim and affirm.

(2) On June 17, 2017, Jones attended a baby shower with Natosha Frisby and their child. During the event, Frisby took the baby to a women's bathroom. While Frisby was inside the bathroom, Jones entered, looked around, and asked if she was "here with someone else."[1] Frisby told him to leave the women's bathroom. Jones "looked in the stall, didn't see anyone."[2] After the baby shower, Jones, Frisby, and their child went to Frisby's home. Jones and Frisby drank wine, and Frisby fell asleep on the couch. Later that night, Frisby awoke to Jones standing over her, punching her in the face. He continued to punch her, then covered her mouth to muffle her screams. She testified at trial that Jones was much bigger than her and she was unable to push him off while he hit her. He then ordered her into the kitchen. In the kitchen, Jones grabbed a screwdriver from a kitchen island. He then put the screwdriver toward her chest and said, "I'm going to ask you this question again, and if you don't tell me what I want to hear, I'm going to kill you, have you been

---

[1] App. to Appellant's Opening Br. at A36 at 77:13 [hereinafter A_].
[2] *Id.* at A36 at 77:16-17.

2

cheating on me?"[3] Frisby further testified that the screwdriver was touching her chest and that she feared for her life as Jones pointed the screwdriver at her. Eventually, Jones calmed down and left. Frisby called 911 and, later that night, went to the hospital, where pictures of her injuries were taken.

(3) On August 7, 2017, Jones was arrested for Aggravated Menacing, PDWDCF and the above-mentioned other charges related to the June 17 incident. Bond was set that day, and a condition was imposed that Jones have no contact with Frisby or their child. Jones was unable to post bond and remained in detention. Sometime later in August of 2017, Frisby received an envelope addressed to their child. It was postmarked August 14, 2017. The return address indicated it was sent by Jones from prison. Inside the envelope was a letter to Frisby from Jones. A grand jury subsequently indicted Jones on two counts of Breach of Conditions of Bond During Commitment. A jury convicted Jones on all counts.

(4) Jones did not move for judgement of acquittal on any charge. Where defense counsel does not move for judgement of acquittal, "the defendant has failed to preserve the right to appeal the issue of the sufficiency of the evidence to convict, . . . [and] we . . . apply the plain error standard of review."[4] "Under the plain error

---

[3] *Id.* at A37 at 84:14-16.
[4] *Williamson v. State*, 113 A.3d 155, 157 (Del. 2015) (citation omitted); *see* SUPR. CT. R. 8.

standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6] In the context of this case, a finding of plain error would require a finding that the trial judge erred by not *sua sponte* entering a judgment of acquittal on the Aggravated Menacing charge, the PDWDCF charge, or the two Breach of Conditions of Release During Commitment charges, despite the absence of a motion.

(5) Aggravated Menacing occurs "when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury."[7] Whether the defendant has displayed "what appears to be a deadly weapon," depends on the victim's belief.[8] It is sufficient under the statute that the weapon "appears" to be a deadly weapon "even if it turns out not to be a deadly weapon."[9]

---

[5] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).
[6] *Id.*
[7] 11 *Del. C.* § 602(b).
[8] *See Graham v. State*, 846 A.2d 238, 2004 WL 557168, at *3 (Del. Mar. 19, 2005) (TABLE) ("Thus, . . . the focus of the aggravated menacing statute is on the victim's perception of the threat rather than on the actual risk of danger.").
[9] *Id.*

4

(6)     PDWDCF occurs when a person possesses "a deadly weapon during the commission of a felony," in this case, Aggravated Menacing.[10]   A deadly weapon,

> includes a "firearm, . . . a bomb, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain, or ice pick or *any 'dangerous instrument,'* as defined in paragraph (4) of this section, *which is used, or attempted to be used, to cause death or serious physical injury*.[11]

(7)     A dangerous instrument includes "any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."[12]

(8)     Both Jones and the State agree that the screwdriver was a dangerous instrument.  Jones's claim on appeal is that the screwdriver was not a deadly weapon because he never used or attempted to use it to cause death or serious physical injury. The State disagrees, focusing instead on the dangerous instrument's potential to kill or seriously injure Frisby.

(9)     The Delaware General Assembly amended the definition of "deadly

---

[10] 11 *Del. C.* § 1447.
[11] 11 *Del. C.* § 222(5) (emphasis added).
[12] 11 *Del. C.* § 222(4).

weapon" in 1992 to include ordinary objects that, through their use, became deadly weapons.[13] The "use test" qualifies "dangerous instrument" – where a dangerous instrument is used or attempted to be used to cause death or serious physical injury, that object becomes a deadly weapon.[14]  Items either enumerated as "deadly weapons" or similar to those listed in § 222(5) bypass the "use test" because those objects (guns, bombs, certain knives, etc.) are *per se* deadly weapons.[15]

We explored the ramifications of the 1992 amendment in *Taylor v. State*:

> The General Assembly intended to add to the specific list of deadly weapons any item which had previously fallen within the designation of a dangerous instrument.  In so doing, the legislature imparted to such items a 'use' test which characterized those items as deadly weapons if, under the circumstances of their use, they had the potential for the infliction of death or serious physical injury.  Thus, the legislature no longer defines an item as a deadly weapon according to its common, everyday usage, but instead has made dispositive that item's potential for causing death or serious physical injury in the way it was actually used in the circumstances leading to the charge.[16]

---

[13] *See Johnson v. State*, 711 A.2d 18, 27 (Del. 1998) (discussing the history of 11 *Del. C.* § 222 regarding the definitions of "deadly weapon" and "dangerous instrument").

[14] *Id.*

[15] *See Simon v. State*, 985 A.2d 391, 2009 WL 4164884, at *2 (Del. Nov. 25, 2009) (TABLE) (finding a bow and arrow "inherently" to be a deadly weapon and noting that "[t]his Court has made clear that the list of weapons in Section 222(5) is intended to be illustrative, not exhaustive" (citing *Taylor v. State*, 679 A.2d 449, 453 (Del. 1996) (en banc) and *Johnson*, 711 A.2d at 27)).

[16] *Taylor*, 679 A.2d at 454 (citation omitted).

(10) In *Johnson v. State*, this Court provided a similar historical analysis of the definition of "deadly weapon." We viewed the 1992 amendment as expanding the definition of deadly weapon through the "use test."[17] We reiterated the *Taylor* proposition that "[t]he 'use test' makes ordinary items, that otherwise serve a legitimate function in daily life, deadly weapons if, under the circumstances of their use, they had the potential for the infliction of death or serious physical injury."[18]

(11) Approximately a decade later in *Carter v. State*, a case on which both parties rely, we applied the "use test" to the definition of a dangerous instrument. We reasoned that "the General Assembly must have intended that the fact finder consider the actual circumstances and not any conceivable circumstance under which the instrument *might* have been used. The 'circumstances' to be considered must include the actor's intent and manner of use."[19] In *Carter*, this Court considered only whether a lacrosse stick was a *dangerous instrument*, not whether the stick was also a *deadly weapon*.[20] We found that a lacrosse stick that a teenager used to smack his stepfather on the hand was not a dangerous instrument under the circumstances. The State did not present any evidence of serious physical injury or that the stick "was readily capable of causing death or serious physical injury *under*

---

[17] *Johnson*, 711 A.2d at 27.
[18] *Id.*
[19] *Carter v. State*, 933 A.2d 774, 778 (Del. 2007).
[20] *Id.* at 779.

*those circumstances.*"[21] We reasoned that "[t]he mere possibility that a lacrosse stick *could have been* wielded in a manner that might have caused death or serious physical injury is not one of the unique factual circumstances of this case;" rather, "[u]nder the actual circumstances here, no plausible case can be made that [the son] using the plastic end of a lacrosse stick to strike [his stepfather] on the hand would be capable of causing serious physical injury or death."[22]

(12)   Jones first contends that the evidence was insufficient to support a verdict of guilty on the charge of Aggravated Menacing. Whether a person can be found to have committed Aggravated Menacing depends on whether the alleged victim subjectively believes that an object "appears to be a deadly weapon."[23] The jury heard that Frisby feared for her life while Jones held the screwdriver to her chest. This evidence supports a conclusion that to Frisby the screwdriver appeared to be an object that Jones could use to cause her serious physical injury or death, i.e., a deadly weapon. The screwdriver did not need be a deadly weapon; it merely needed to *appear* to be one to Frisby.[24] There is no plain error with regard to the Aggravated Menacing charge.

---

[21] *Id*. at 778.
[22] *Id*. at 779.
[23] *See Graham v. State*, 846 A.2d 238, 2004 WL 557168, at *3 (Del. Mar. 19, 2004) (TABLE); *see also* 11 *Del. C.* § 602.
[24] *See Graham*, 2004 WL 557168, at *3.

(13)  Jones next contends that the evidence was insufficient to support his conviction of PDWDCF.  As to this contention, Jones may be correct in part – if Jones did not use or attempt to use the screwdriver to cause death or serious physical injury to Frisby, he could not have committed PDWDCF.  Yet, as Jones did not move for a judgment of acquittal, this Court is limited by the standard of review.[25]

(14)  At trial, no evidence was presented that Jones actually attempted to stab Frisby. Testimony at trial clearly indicated, however, that Jones pressed the screwdriver to Frisby's chest and threatened to kill her.  By his words, he evidenced an intent to use the object to kill her.  And *under the circumstances* in which Jones used the screwdriver – to order a much weaker, vulnerable woman at "screwdriver-point" under threat of death to answer questions – death, or at least serious physical injury to Frisby, could have seemed imminent.  During closing argument, defense counsel queried the jury on whether the screwdriver in this case satisfied the definition of a "deadly weapon," asking,

> [i]s taking a screwdriver and pointing it at someone, even in the context of this horrible incident, the same as using that screwdriver to cause a serious injury?  Of course not. Is it threatening?  Absolutely.  But is it an actual attempt to cause a serious physical injury?  It is defense's position that it is not.[26]

---

[25] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).
[26] A68 at 72:22 to A69 at 73:5.

9

(15) Evidently, it was the jury's decision, after deliberation and being properly instructed on the definitions of "dangerous instrument" and "deadly weapon," that the use of the screwdriver *under the circumstances* was an attempt to cause Frisby serious physical injury or death. To the jury, the fact that the screwdriver was physically touching Frisby's chest was sufficient *under the circumstances* for the jury to infer reasonably that Jones was attempting to cause serious harm to Frisby, in spite of testimony that Jones did not actually attempt to stab Frisby. As discussed, on appeal we are limited by the plain error standard of review, which is a demanding standard. We conclude that no plain error occurred on the part of the trial judge with respect to the charge of PDWDCF.

(16) Jones's second claim is that the evidence was insufficient to support his convictions on two counts of Breach of Conditions of Bond During Commitment. This contention is also subject to plain error review.

(17) Breach of Conditions of Bond During Commitment, as charged in this case, occurs when a person being held in lieu of bond on one or more felonies breaches a condition of bond.[27] Jones contends the evidence was insufficient to support his convictions for Breach of Conditions of Bond During Commitment because the State never actually introduced evidence before the jury at the trial to

---

[27] 11 *Del. C.* § 2109(c)(1).

10

explain that at the time of the alleged offenses he was being held in connection with one or more felonies. However, the arresting officer testified that he arrested Jones on two felonies, and the evidence appears to show that Jones knowingly violated the terms of his detention. There is no plain error here.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

11