# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID: 2006010317 |
| | ) | |
| DASHAN FREEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: June 20, 2023
Date Decided: September 27, 2023

## MEMORANDUM OPINION

*Upon Defendant's Motion for New Trial*:
**DENIED**

John Downs, Esquire, Deputy Attorney General and Cynthia Hurlock, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorneys for the State of Delaware.*

Ross A. Flockerzie, Esquire and Alexandria M. Shaffer, Esquire, Office of Defense Services, Wilmington, Delaware. *Attorneys for Defendant.*

**Adams, J.**

# INTRODUCTION

Trial in this first-degree murder action began on April 11, 2023.  Following trial, the jury reached a verdict and convicted Defendant of Murder in the First Degree (Count I), Possession of a Firearm During the Commission of a Felony (Count II), Murder in the First Degree ("Felony Murder")(Count III), Possession of a Firearm During the Commission of a Felony (Count IV), Burglary First Degree (Count V), Possession of a Firearm During the Commission of a Felony  (Count VI), and Possession of a Firearm by a Person Prohibited (Count IX).[1]  A mistrial was declared following a hung jury on the remaining two counts, Assault First Degree (Count VII) and Possession of a Firearm During the Commission of a Felony (Count VIII).

On April 24, 2023, Defendant filed a Motion for New Trial based on allegations of prosecutorial misconduct through statements made during closing and rebuttal arguments.  Defendant alleges the prosecutor's statements were prejudicial to his substantial rights and a new trial is "required in the interest of justice" to protect against "abuse and prejudice in the trial process."  The Court disagrees and finds no prosecutorial misconduct.  Moreover, because Defendant failed to object to the alleged misconduct at trial, the Court will review only for plain error.  Here, the

---

[1]    The trial was split into two phases: Phase A (Counts I–VIII) and Phase B (Count IX).

1

statements made during closing and rebuttal arguments were not "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial."[2] Defendant's Motion for New Trial is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2023, the Court granted Defendant's Motion to Suppress and/or Exclude all evidence illegally obtained from the Defendant's cell phone.[3] As a result, evidence of pre-arrest text messages exchanged between Defendant and the victim, Deona Bethea ("Bethea"), from August and early September 2020 were excluded from the trial.[4]

On April 12, 2023, the State asked Bethea on direct examination regarding her communications with the Defendant after the shooting.[5] The following dialogue occurred:

> Q.  After you were shot, did you stay in the hospital – you said, five days?
> A.  Yeah, about five days.
> Q.  Did you and Dashan Freeman talk?
> A.  No.
> Q.  Did he text you?

---

[2]    *Watson v. State*, --- A.3d ----, 2023 WL 5030026, at *5 (Del. Aug. 8, 2023) (quoting *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)).

[3]    The Court refers the parties to the Court's Memorandum Opinion on this issue for a more complete recitation of the factual background. *See State v. Freeman*, 2023 WL 2854771, at *6 (Del. Super. Apr. 9, 2023). This decision only includes those facts relevant to Defendant's Motion for New Trial.

[4]    *Id.*

[5]    State's Resp. to Def.'s Mot. at 4 (June 2, 2023).

A.    No.

Q.    Did he get in contact with you at any time?

A.    No.

Q.    Now, you're aware that Dashan was arrested for this on September 23, 2020?

A.    Yes.

Q.    Did Dashan Freeman contact you then?

A.    Yes.

Q.    How did he do that?

A.    Through phone, via phone.[6]

On April 14, 2023, during the State's closing argument, the Deputy Attorney General stated in part, "Deona Bethea *from the stand* said she didn't hear from Freeman until he got arrested, but after he got arrested, they started talking. . . . Wherever he is, according to Deona Bethea, he's not calling her. He's having no contact with her until he gets arrested."[7] Following the end of closing arguments, the jury was dismissed for deliberations. On April 17, 2023, the jury returned a guilty verdict for Counts I-VI and Count IX. The jury was hung for Counts VII and VIII and the Court declared a mistrial for those counts.

On April 24, 2023, the Defendant filed a Motion for New Trial. Defendant argues that the State's use of Bethea's testimony that she had no contact with Defendant before his arrest during closing argument was prosecutorial misconduct.

---

[6]    State's Ex. A, Trial Tr. at 31–32, Deona Bethea Test. (Apr. 12, 2023).

[7]    State's Ex. B, Trial Tr. at 17, State's Closing Arg. (Apr. 14, 2023) (emphasis added). Defense counsel did not raise an objection to this statement during closing argument.

According to Defendant, the State knew that testimony was false based on its knowledge of pre-arrest text messages that were excluded from admission at trial. Thus, Defendant contends that the State's conduct was prejudicial to his substantial rights and warrants a new trial in the interest of justice.[8]

## STANDARD OF REVIEW

Superior Court Criminal Procedure Rule 33 grants the Court, upon motion of a Defendant, the discretion to grant a new trial if "required in the interest of justice."[9] In considering a claim of alleged prosecutorial misconduct, "the Court's standard of review depends on whether a timely objection was raised at trial."[10] If the Defendant did not object at trial and/or the trial judge did not intervene *sua sponte*, the Court reviews only for plain error.[11]

---

[8]    Def.'s Mot. for New Trial at 3 (Apr. 24, 2023).
[9]    Super. Ct. Crim. R. 33.
[10]    *State v. Schaeffer-Patton*, 2023 WL 2062521, at *2 (Del. Super. Feb. 17, 2023).
[11]    *Baker v. State*, 906 A.2d 139, 150 (Del. 2006). A plain error determination "is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." The Supreme Court of Delaware recently affirmed this analysis in *Watson v. State*, 2023 WL 5030026, at *5 and *Coverdale v. State*, 2023 WL 5975130, at *7 (Del. Sept. 14, 2023) (TABLE).

Under a plain error review, the Court first determines if the prosecutor's actions constitute misconduct.[12] If the Court determines that no misconduct occurred, the analysis ends.[13]

The Court is guided by the ABA Standards to determine whether a claim of prosecutorial misconduct exits.[14] Pursuant to ABA Standards, as an advocate and administrator of justice, a prosecutor "must exercise sound discretion in the performance of his functions."[15] A prosecutor is held to a standard of ensuring a defendant's right to a fair trial during closing arguments.[16] The Supreme Court of Delaware has held that "[i]t is thus 'as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'"[17]

As the Supreme Court recently held in *Watson*:

In closing argument to a jury (or to a judge sitting as trier of fact), the prosecutor should present arguments and a fair summary of the evidence that proves the defendant guilty beyond a reasonable doubt. The prosecutor may argue all reasonable inferences from the evidence

---

[12] *Baker*, 906 A.2d at 150.
[13] *Id*; *Brooks v. State*, 2023 WL 3743109 (TABLE), at *2 (Del. May 31, 2023).
[14] *Watson*, 2023 WL 5030026, at *6.
[15] *Hughes v. State*, 437 A.2d 559, 566 (Del. 1981) (quoting ABA Standards for Criminal Justice: Prosecution and Defense Functions, § 1.1(b) (Approved Draft, 1971)).
[16] *See Bennett v. State*, 164 A.2d 442, 446 (Del. 1960). *See also Watson*, 2023 WL 5030026, at *5 (discussing a prosecutor's duty when presenting closing argument).
[17] *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

in the record, unless the prosecutor knows an inference to be false. … The prosecutor should not . . . argue inferences that the prosecutor knows have no good-faith support in the record. … The prosecutor should not make arguments calculated to appeal to improper prejudices of the trier of fact. The prosecutor should make only those arguments that are consistent with the trier's duty to decide the case on the evidence, and should not seek to divert the trier from that duty. …[18]

Stated another way, a prosecutor must act as "a minister of justice" and "an advocate . . . with [] specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence."[19] Thus, a prosecutor may not misstate evidence or mislead the jury regarding inferences that may be drawn from the evidence.[20] However, he or she may "argue all legitimate inferences of the defendant's guilt that follow from the evidence."[21]

If the Court determines that prosecutorial misconduct occurred, the Court will then apply the plain error standard.[22] As the Supreme Court recently noted in *Watson v. State* and *Coverdale v. State*, "[f]or an error to be 'plain' under this standard, it 'must be so clearly prejudicial to substantial rights as to jeopardize the very fairness

---

[18] *Watson*, 2023 WL 5030026, at *5 (citing *Crim. Justice Standards for the Prosecution Function* Standard 3-6.6 AM. BAR ASS'n (2017), https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/ (emphasis added).

[19] Del. Lawyers' R. Prof'l. Conduct 3.8 cmt. 1.

[20] *Hughes*, 437 A.2d at 567 (quoting ABA Standards for Criminal Justice: Prosecution and Defense Functions, § 5.8(a) (Approved Draft, 1971)).

[21] *Burns v. State*, 76 A.3d 780, 789 (Del. 2013).

[22] *Watson*, 2023 WL 5030026, at *5 (citing *Saavedra v. State*, 225 A.3d 364, 372 (Del. 2020)).

and integrity of the trial.'"[23]  A finding of plain error is "limited to material defects that are 'apparent on the face of the record[,] . . . basic, serious and fundamental in their character. . . .'"[24]

## ANALYSIS

A new trial in this case is not required "in the interest of justice."[25]  Because there was no objection raised at trial, the Court conducts a plain error review of the statements made by the prosecution during closing argument that form the basis of the alleged misconduct.  First, however, the Court engages in a *de novo* review to determine whether the prosecutor's action rise to the level of misconduct.[26]  Upon careful review of the record, this Court finds no prosecutorial misconduct.  Even if the Court were to accept Defendant's claim that the statements made during closing amounted to prosecutorial misconduct (which they do not), Defendant has not shown plain error.

---

[23]     *Watson*, 2023 WL 5030026, at *5 (quoting *Dutton v. State*, 452 A.2d 127 (Del. 1982)); *Coverdale*, 2023 WL 5975130, at *7 (discussing the plain error standard in the context of closing argument).
[24]     *Watson*, 2023 WL 5030026, at *5 (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986))
[25]     Super. Ct. Crim. R. 33.
[26]     *Watson*, 2023 WL 5030026, at *5 (citing *Saavedra*, 225 A.3d at 372).

7

## I. The Statements Made During Closing and Rebuttal Arguments Did Not Amount to Prosecutorial Misconduct.

The statements made during closing and rebuttal arguments did not misstate the evidence or mislead the jury."[27] During direct examination of Bethea, the State questioned Bethea about contact between Bethea and Defendant from the time she was shot until Defendant was arrested:

> Q. After you were shot, did you stay in the hospital – you said, five days?
> A. Yeah, about five days.
> Q. Did you and Dashan Freeman talk?
> A. No.
> Q. Did he text you?
> A. No.
> Q. Did you visit him?
> A. No.
> Q. Did he get in contact with you at any time?
> A. No.
> Q. Now, you're aware that Dashan was [arrested] for this on September 23, 2020?
> A. Yes.
> Q. Did Dashan Freeman contact you then?
> A. Yes.
> Q. How did he do that?
> A. Through phone, via phone.[28]

The State did not question Bethea about any text communications between Bethea and Defendant in accordance with the Court's ruling from April 9, 2023.

---

[27] *Watson*, 2023 WL 5030026, at *5; *Hughes*, 437 A.2d at 567.
[28] State's Ex. A, Trial Tr. at 31–32, Deona Bethea Test. (Apr. 12, 2023).

During closing, the State discussed Bethea's testimony as follows: "Deona Bethea *from the stand* said she didn't hear from Freeman until he got arrested, but after he got arrested, they started talking. So for three months, Freeman is wherever Freeman is."[29] Thus, the State accurately commented on the evidence presented at trial, and did so in a way that did not violate the Court's prior ruling.[30]

The Court finds that no prosecutorial misconduct occurred here. The Court's review of the prosecution's conduct based on the ABA standards and Delaware case law demonstrates the State exercised sound discretion in carrying out its trial responsibilities to ensure the Defendant received a fair trial.

## II. The Court Finds No Plain Error that Would Warrant a New Trial.

For the avoidance of doubt, even though the Court finds that there was no prosecutorial misconduct, the Court will also engage in a plain error analysis. In applying the *Wainwright* standard, the alleged error by the State was not "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[31] Here, the State chose to refrain from further questioning of Bethea on direct examination to avoid violating this Court's suppression order.[32] The State

---

[29] State's Ex. B, Trial Tr. at 17, State's Closing Arg. (Apr. 14, 2023) (emphasis added).

[30] *See Coverdale*, 2023 WL 5975130, at *7 (holding that the State could not fairly be charged with misconduct based on inferences drawn from the record during closing argument).

[31] *Wainwright*, 504 A.2d at 1100. (citations omitted)

[32] State's Resp. to Def.'s Mot. at 3-4 (June 2, 2023).

also used proper methods and legitimate means of bringing about a just conviction by basing its summation only on evidence that was presented at trial.[33]

Despite the Defendant's contention, the State did not misstate evidence but made legitimate inferences of the Defendant's guilt that followed from Bethea's direct testimony and the substantial amount of other evidence available at trial including post-arrest text messages and prison phone calls. Thus, there is insufficient evidence of prosecutorial misconduct and insufficient evidence that the Defendant did not receive a fair trial to justify granting a new trial.

Finally, to the extent the Court is required to engage in an analysis under *Hunter v. State*, 815 A.2d 730 (Del. 2002),[34] the Court does not find that "the prosecutor's statements [were] repetitive errors that require reversal because they cast doubt on the integrity of the judicial process."[35] Defense argues heavily on *State v. Matthews*, where the prosecutor misstated the evidence in closing argument.[36]

---

[33] The Court also notes that it instructed the jury both before trial and during jury instructions (after closing argument) regarding closing arguments. Trial Tr. (Preliminary Instructions to Jury) at 3 ("Closing arguments are not evidence") and Trial Tr. (Excerpt of Jury Charge) at 2 ("What an attorney states, however, in opening statements or closing arguments is not evidence. Arguments merely are made to assist you in organizing the evidence and to suggest the logical conclusion that may be reached from the evidence presented.").

[34] *See Watson*, 2023 WL 5030026, at *8 n.50 (noting that after engaging in the *Wainwright* plain-error standard, the court is instructed to apply an additional analytical step in accordance with *Hunter*).

[35] *Brooks*, 2023 WL 3743109 (TABLE), at *2 (quoting *Morales v. State*, 133 A.3d 527, 530 (Del. 2016)).

[36] 2018 WL 6498694, at *5 (Del. Super. Dec. 10, 2018).

10

Here, as previously discussed, the State did not misstate the evidence. As such, no reversal is required in this instance.[37]

Therefore, Defendant's Motion for New Trial is **DENIED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[37] *Morales*, 133 A.3d at 532.